JOSEPH BONANNO, Plaintiff-Appellant, *v.* LA SALLE AND BUREAU COUNTY RAILROAD COMPANY, Defendant-Appellee.

Third District    No. 79-818

Opinion filed August 28, 1980.

T. A. Groenke and Sara Pfrommer, both of McDermott, Will & Emery, of Chicago, and Craig Armstrong, of Ottawa, for appellant.

Frank K. Heap and John J. Verscaj, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, and Michael T. Reagan, of Hupp, Irion & Reagan, of Ottawa, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Joseph Bonanno appeals from two orders of the Circuit Court of La Salle County, one of which dismissed his complaint against defend-

ant La Salle & Bureau County Railroad Company on the ground of *res judicata* and the other which denied him leave to file an amended complaint. The litigation which preceded the orders appealed from must be summarized in order to understand the contested rulings.

The transactions giving rise to this litigation occurred in 1970 when plaintiff, through his wholly owned corporation, Diversified Properties, Inc., purchased 466 surplus railroad boxcars at $1,000 each from Equitable Life Assurance Company and financed the purchase with a bank loan. Plaintiff then contracted with defendant railroad to lease tracks and facilities for the repair and refurbishing of the cars which were to be delivered to defendant by the previous lessee, Penn Central Railroad. Defendant agreed to place the refurbished cars back in service and to collect the *per diem* fees for the use of the cars. The term of the contract was to be 7 years, but difficulties arose when Penn Central delivered to defendant some cars which were not listed by serial number in the purchase and lease contracts, and as to other cars which *were* listed in the contracts, Penn Central retained possession and collected the *per diem* fees for their use. Eventually Penn Central, Diversified, and defendant settled their conflicting claims to the *per diem* payments collected upon the boxcars and agreed to return the boxcars to their rightful owners. At the same time, Diversified released defendant from the service agreement, and plaintiff entered into an agreement with another railroad, Cadillac & Lake City Railroad, to act as servicing agent for his boxcars. By July 1971, most of plaintiff's boxcars had been transferred to Cadillac, but not all.

In order to meet the payments due on his New Jersey bank loan, plaintiff sold his interest in Diversified, including his claim to the remaining boxcars and his claim of $175,000 in unpaid *per diem* fees, to Emons Industries. Diversified had, in the meantime, filed a Federal suit against defendant to collect the withheld fees, but this suit was subsequently dismissed for want of diversity jurisdiction. When defendant declined to turn over the cars and the fees to Emons, plaintiff extricated himself from the Emons deal by agreeing to pay Emons $166,000 and other property in return for the claim against defendant for the fees and boxcars.

Plaintiff, then, in November of 1972, entered into a contract with Medic Enterprises whereby Medic paid $175,000 for title to about 86 boxcars and the claim to the fees. Medic recovered possession of 20 of the boxcars from another railroad and returned them to service after refurbishing, but defendant again refused to turn over the remaining 66 cars and the *per diem* fees. In May of 1973 Medic filed suit against defendant, alleging that defendant had wrongfully detained 66 cars having a value of $660,000 in violation of defendant's agreement with Diversified; that Medic is the successor in interest to Diversified; that Medic has lost $175,000 due to

defendant's failure to place these cars in service; that Medic has lost $100,000 for repairs that will be required because the brass fittings have been stripped from the cars; and that Medic has lost $100,000 in fees wrongfully withheld. On June 11, 1973, defendant filed a motion to dismiss the complaint because of certain technical defects in the complaint, and on November 6, 1974, after notice to the attorney of record, the motion was granted. The court's order recited that there was no appearance for the plaintiff at the hearing. A copy of the order was sent to plaintiff's attorney. In June of 1975 defendant filed a motion for final order of dismissal which asserted that plaintiff had engaged in no activity in this suit since the November 6, 1974, dismissal order, and again, after notice to plaintiff's attorney of record, the requested order was entered on June 9, 1975. That order recited that plaintiff did not appear for the hearing and then stated that "this Cause is hereby finally dismissed with prejudice."

A few days later on June 18, 1975, plaintiff filed a petition in the Medic suit requesting the court to substitute him as plaintiff in place of Medic and to grant leave to file an amended complaint. In support of this petition plaintiff attached his own affidavit which asserted that he has "succeeded to all right and interest of Medic Enterprises, Inc.," in the La Salle County suit by virtue of a consent order entered in a New Jersey proceeding. The New Jersey order declared the contract between plaintiff and Medic rescinded. In the amended complaint, which plaintiff sought leave to file, plaintiff stated, *inter alia*, that he acquired "right, title and interest in the subject matter of this suit" pursuant to the New Jersey consent order; that he was the successor in interest to Diversified; and that Diversified had contracted with defendant for the use of certain railroad cars, 66 of which were wrongfully detained by defendant. The remainder of the amended complaint was identical to the Medic complaint except that the fees lost for failure to place these cars in service was computed at $500,000. Plaintiff later filed a motion to vacate the dismissal of the Medic suit, and that motion was denied on July 31, 1975. No appeal was taken in that proceeding.

Plaintiff then commenced this proceeding by filing a complaint which was identical to the amended complaint he had sought unsuccessfully to file in the Medic suit, except that he now alleged the loss of fees to be $720,000. Defendant filed a motion to dismiss on the ground that Medic's litigation was binding upon its privies and successors, and the motion was denied. The trial court noted orally that plaintiff had not known the Medic suit was on file since he was not a party to it. Thereafter defendant filed an answer and counterclaim; plaintiff answered the counterclaim; various discovery procedures were undertaken; and finally, after the cause was set for trial, defendant filed another motion to dismiss, again asserting that

plaintiff was barred by the dismissal with prejudice of Medic's suit. In support of the motion defendant submitted plaintiff's discovery deposition which related that plaintiff had known of the Medic suit and had discussed the suit with Medic's attorney. The motion to dismiss was granted.

Plaintiff then retained new counsel and filed a motion to vacate the order of dismissal. At the hearing on the motion, the trial court gave plaintiff 30 additional days to present a complaint stating a cause of action outside the four corners of the dismissed complaint. Thereafter plaintiff filed a motion for leave to file an amended complaint naming as defendants not only defendant corporation but also the corporate officers and directors as individuals, alleging a conspiracy to injure plaintiff by depriving him of the fees and boxcars to which he is entitled, and seeking an injunction as well as money damages. The amended complaint sets out in detail plaintiff's attempts to sell his claim against defendant, first to Emons and then to Medic, and alleges that each time, defendant refused to deliver the cars as promised in pursuit of its conspiracy with the malicious intention of depriving him of his railroad car business. The trial court denied plaintiff's motion to vacate and his motion for leave to file an amended complaint.

Plaintiff has perfected this appeal, contending that the trial court erred in dismissing his original complaint and in refusing him leave to file his amended complaint. We affirm.

Plaintiff contends that his original complaint filed herein should not have been dismissed for three reasons: (1) because *res judicata* should not be applied where the plaintiff would be unjustly denied a chance to have a fair trial on the merits of the case; (2) because Supreme Court Rule 273, providing that an involuntary dismissal acts as an adjudication on the merits, does not apply where the dismissal was based upon technical matters; (3) because plaintiff was not in privity with Medic and could not have controlled Medic's suit.

The doctrine of *res judicata* was described by the Illinois Supreme Court in *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 426, 186 N.E. 152, 155, as follows:

> "The doctrine of *res judicata* is, that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except as the judgment or decree may be brought before a court of appellate jurisdiction for review in the manner provided by law. A judgment of decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them. The doctrine extends not only to the questions actually

decided but to all grounds of recovery or defense which might have been presented."

Plaintiff first argues that the doctrine of *res judicata* should only be applied as fairness and justice require (*Rotogravure Service, Inc. v. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 369 N.E.2d 1363), and that it would be unfair and unjust to deny him a trial upon the merits of his claim. In the context of this appeal, we think the question of fairness and justice must be resolved in favor of defendant after taking into account the fact that defendant has been required to defend this controversy almost continuously since 1971 when Diversified filed a Federal action.

■■ Plaintiff insists that there was no prior adjudication upon the merits because the involuntary dismissal was based upon technical deficiencies. Supreme Court Rule 273 (Ill. Rev. Stat. 1979, ch. 110A, par. 273) is, as follows:

> "Unless the order of dismissal or a statute of this State otherwise specifies, *an involuntary dismissal of an action*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, *operates as an adjudication upon the merits*." (Emphasis added.)

Plaintiff cites no Illinois case recognizing a "technical deficiencies" exception to Rule 273, but instead he relies upon Federal cases so interpreting Rule 41(b) of the Federal Rules of Civil Procedure. (See, *e.g., Costello v. United States* (1961), 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534.) Our Rule 273 was derived from Federal Rule 41(b) (Ill. Ann. Stat., ch. 110A, par. 273, Committee Comments, at 281 (Smith-Hurd 1968)), but we need not resort to Federal case law in this instance, because the record before us indicates that the final dismissal with prejudice of the Medic suit was actually for want of prosecution, Medic having failed to respond to either the first or second motion to dismiss or to undertake any other activity in the cause. It has been held that a dismissal with prejudice for failure of plaintiff to file a timely amendment to his complaint operates as a final adjudication upon the merits, thereby barring a second cause of action involving virtually identical parties, subject matter, and issues. (*Brainerd v. First Lake County National Bank* (1971), 1 Ill. App. 3d 780, 275 N.E.2d 468.) Consequently, the final order dismissing the Medic suit was a bar to subsequent action upon the same claim between the same parties or those in privity with those parties.

■■■ Plaintiff also argues that he lacks privity with Medic within the meaning of the doctrine of *res judicata* and that, as a consequence, the doctrine is inapplicable for lack of identity of parties. "Privity contemplates

a mutual or successive relationship to the same property rights which were the subject matter of prior litigation." (*Sweeting v. Campbell* (1954), 2 Ill. 2d 491, 496, 119 N.E.2d 237.) One whose succession to the disputed property rights occurred after the institution of the suit, and from a party of the suit, will be bound by the former action, while a predecessor in interest is not so bound. (*Sweeting.*) In the instant case, plaintiff was a predecessor in interest to Medic in that he sold to Medic his claim against defendant; however, by mutual agreement evidenced by the New Jersey consent decree rescinding the decree, plaintiff later became the successor in interest as well. Plaintiff has alleged in the complaint which was barred that he is the successor in interest to Medic. By so pleading, plaintiff has admitted that he succeeded to Medic's interest on October 11, 1974, when the New Jersey decree was entered, which was nine months before the Medic suit was dismissed with prejudice on July 9, 1975. Additionally significant is the fact that plaintiff has stated in a deposition that he had actual knowledge of Medic's litigation and had discussed the lawsuit with Medic's attorney. Accordingly, the trial court did not err in ruling that plaintiff's complaint was barred.

The next error assigned by plaintiff is the denial of leave to file an amended complaint following the trial court's dismissal of his original complaint. He says the amended complaint should have been allowed (1) because the dismissal of the original complaint came on the eve of trial; (2) because the amended complaint presents claims personal to plaintiff and substantially different from the claims asserted by Medic; (3) because the amended complaint states a different cause of injury; (4) because both the parties and the subject matter are different.

■■■ Plaintiff makes reference to the inherent unfairness of the dismissal here coming on the date set for trial after an earlier motion to dismiss had been denied and after plaintiff had undertaken detailed and expensive preparations for trial. Granting a motion to dismiss which had previously been erroneously denied is not error. (*Towns v. Yellow Cab Co.* (1977), 53 Ill. App. 3d 47, 368 N.E.2d 549.) As to the contention of unfairness, it would surely be even more unfair to permit a trial to proceed upon a complaint which should have been barred, thus requiring both parties to incur the cost of an unnecessary trial. Any question as to the propriety of refusing the amended complaint must be resolved by considering the merits of the proposed amended complaint and not the timing of the court's ruling.

In *Daviditis v. National Bank* (1955), 6 Ill. App. 2d 286, 127 N.E.2d 462, *cert. denied* (1958), 357 U.S. 919, 2 L. Ed. 2d 1363, 78 S. Ct. 1359, plaintiffs' complaint was dismissed on the ground that the claim for damages advanced therein had been previously adjudicated, and the trial court also denied plaintiffs' motion for leave to file an amended complaint. The reviewing court affirmed, finding no abuse of discretion, and stated:

"Plaintiffs were not, as a matter of right, entitled to file an amended complaint. * * * The trial court having held plaintiffs' action to be barred by application of the principle of res judicata, such bar extended to all grounds of recovery or defense involved in the dispute between the parties which might have been raised." 6 Ill. App. 2d 286, 288-89, 127 N.E.2d 462.

The Illinois Supreme Court has also held that the allowance or denial of a motion to amend is a matter within the discretion of the trial court, and has said:

"The test to be applied in determining whether discretion with respect to allowance of amendment to pleadings was properly exercised is whether it furthers the ends of justice and, in such regard, the court may properly consider the ultimate efficacy of a claim in passing on a motion for leave to amend." *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281, 194 N.E.2d 213.

■■ In the case before us, plaintiff argues that his amended complaint should have been allowed because the officers and directors of defendant corporation were added as party-defendants as members of an alleged conspiracy to injure plaintiff. He reasons that, because different parties would be involved under the amended complaint, the doctrine of *res judicata* would not be applicable. We do not find this argument persuasive. First, in a tort action, a civil conspiracy cannot exist between a corporation and its agents or employees since the acts of an agent are considered to be the acts of the principal. (*John Deere Co. v. Metzler* (1964), 51 Ill. App. 2d 340, 201 N.E.2d 478.) Moreover, when a prior judgment is a bar to a claim against an employer, a claim against an employee, predicated upon the same acts, is also barred. (*Towns v. Yellow Cab Co.* (1977), 53 Ill. App. 3d 47, 368 N.E.2d 549.) Consequently the attempt to add new party defendants in order to evade the applicability of the doctrine of *res judicata* is without legal effect.

■■ Plaintiff also contends that the amended complaint presents a different cause of action which could not have been included in the Medic suit because he has additional claims arising out of alleged injuries personal to plaintiff and involving damages beyond those suffered by Medic. A careful examination of the 22-page amended complaint offered by plaintiff discloses the details of the many transactions involved in plaintiff's boxcar business and attempts to show that his financial difficulties were all caused by defendant's intentional and malicious withholding of certain boxcars and money which plaintiff needed to keep his business afloat. The computation of damages is different in the amended complaint, and injunctive relief is additionally sought, but the wrongful acts which are alleged to have harmed plaintiff are the same: defendant's breach of contract. We think it

fair to say that plaintiff has done little more than provide a historic background to the case and an expanded view of the resultant injuries, and then to ascribe malicious motives to defendant in an effort to convert a contractual cause of action into a tortious cause. Such splitting of a cause of action is not allowed under Illinois law. (*National Tea Co. v. Confection Specialties, Inc.* (1977), 48 Ill. App. 3d 650, 362 N.E.2d 1150.) All of the alleged injuries claimed by plaintiff arose out of the same contract, and thus they cannot be made the basis of several separate lawsuits. We find that the trial court did not abuse its discretion in denying plaintiff's motion for leave to appeal.

For the foregoing reasons, we affirm the judgment of the Circuit Court of La Salle County.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.