**Joseph C. BONANNO, Plaintiff,**

v.

**Dale R. POTTHOFF, Defendant.**

No. 81 C 677.

United States District Court, N. D. Illinois, E. D.

Oct. 21, 1981.

James E. Betke, Margaret M. Lauf; McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Dennis J. Horan, George W. Spellmire; Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Joseph Bonanno ("Bonanno") has responded to this Court's July 10, 1981 memorandum opinion and order (the "Opinion") by filing an Amended Complaint (the "Complaint") against Dale Potthoff ("Potthoff"). Bonanno again attacks Potthoff's alleged lawyer malpractice in two counts, one sounding in tort and the other in contract. Once again Potthoff has moved to dismiss the Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6), relying on an Illinois statute of limitations bar as to each count. For the reasons stated in this memorandum opinion and order, Potthoff's motion is denied as to each count.

### Facts [1]

Late in 1974 Bonanno, having retained Potthoff as his lawyer by a written retainer agreement, became the owner of over $1 million in claims in then-pending litigation against LaSalle & Bureau County Railroad Co. ("LSBC") in downstate Illinois. Though the lawyers for Bonanno's predecessor in ownership sent Potthoff a substitution-of-attorney form, Potthoff (both negligently and in breach of the retainer agreement) failed to file his appearance in

---

[1]. On this motion the "facts" do not represent findings by the Court but are rather derived from allegations in the Complaint. Though al- ready stated for the most part in the Opinion, they are repeated here so that this opinion will be self-contained.

the lawsuit. Very shortly thereafter a previously pending motion to dismiss the Complaint against LSBC, based on easily curable technical defaults, was granted without Potthoff having appeared in opposition. After the lapse of several more months without Potthoff's having appeared in the litigation, LSBC obtained a final order dismissing the case with prejudice June 9, 1975.

Less than 30 days later Potthoff finally filed his appearance and moved to vacate the dismissal. That motion was denied, and Potthoff failed either to take an appeal or to advise Bonanno of his right to appeal. Instead Potthoff filed a new action on Bonanno's behalf in September 1975 on grounds similar or identical to those in the original action. That new action was dismissed in 1979 on res judicata grounds, and the Illinois Appellate Court upheld the dismissal August 28, 1980. *Bonanno v. LaSalle & Bureau County Railroad Co.*, 87 Ill.App.3d 988, 42 Ill.Dec. 866, 409 N.E.2d 481 (3d Dist. 1980). This action followed in February 1981.

### Count I—Bonanno's Tort Claim

All substantive law issues in this diversity action are to be determined under Illinois law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). For that purpose statute of limitations questions are considered substantive. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

It is not however an easy matter to discern just what the applicable Illinois law of limitations is. There are conflicting signals in the Illinois Appellate Court decisions, and this Court must choose among them.

Each Illinois trial court is bound by the decision of each Illinois Appellate Court, but when those Courts conflict the trial court must follow the decisions in its own district. *People v. Thorpe*, 52 Ill.App.3d 576, 579, 10 Ill.Dec. 351, 354, 367 N.E.2d 960, 963 (2d Dist. 1977). Under *Erie* the same principle applies to federal courts sitting in diversity cases. *Instrumentalist Co. v. Marine Corps League*, 509 F.Supp. 323, 339 n.4 (N.D.Ill.1981).

But as will be seen, on at least one important issue in this case there is a conflict *within* Illinois' First Appellate District (in which this Court sits). This Court will then satisfy its *Erie* obligations by employing a Supreme-Court-predictive approach to ascertaining Illinois law. See *In re Air Crash Disaster*, 644 F.2d 594, 606 (7th Cir. 1981); *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 148–49 n.2 (N.D.Ill.1981); *cf. Commercial Discount Corp. v. King*, 515 F.Supp. 988, 991 n.3 (N.D.Ill.1981).

Potthoff's motion as to Bonanno's tort claim asserts the five-year Illinois statute of limitations (Ill.Rev.Stat. ch. 83, § 16 ["Section 16"]) as a bar to the claim. Because more than five years separate the June 1975 final dismissal of the original state court lawsuit from the institution of this action, the critical question is whether Bonanno's tort claim had "accrued" (the operative term in Section 16) in June 1975.

Potthoff argues that under *Dolce v. Gamberdino*, 60 Ill.App.3d 124, 17 Ill.Dec. 274, 376 N.E.2d 273 (1st Dist. 1978) and *Maloney v. Graham*, 171 Ill.App. 409 (1st Dist. 1912), the claim must have "accrued" no later than August 30, 1975. Those cases state that tort actions grounded in a contractual relationship traditionally arise at the time of the tortfeasor's negligent acts and not at the time of injury. *See also West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 132, 12 Ill.Dec. 893, 899, 370 N.E.2d 804, 807 (1977). Here Bonanno clearly alleges no negligent actions on Potthoff's part after his 1975 failure to take an appeal or advise Bonanno of his appeal rights following dismissal of the state court lawsuit. Thus if *Dolce* does represent Illinois law, this action filed in February 1981 is time-barred.

Bonanno responds that the applicable Illinois law is rather "that a cause of action does not accrue until a plaintiff has knowledge or should have knowledge of the defendant's wrongful acts." *E.J. Korvette v. Esko Roofing Co.*, 38 Ill.App.3d 905, 907, 350 N.E.2d 10, 12 (1st Dist.1976). *Korvette's*

result is squarely opposed to that in *Dolce*, because *Korvette* also involved a negligence-grounded action against a defendant with whom plaintiff had a contractual relationship.

Thus there is an arguable conflict between the two First District decisions.[2] Free to choose the most likely result before the Illinois Supreme Court, this Court elects to embrace *Korvette* and eschew *Dolce* precisely because of what the Supreme Court has done in related cases.

*Dolce* (as Potthoff would have us read it) is inconsistent with the Illinois Supreme Court cases that adopted the "discovery rule," *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969) and *Lipsey v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450 (1970). *Rozny* considered the duty in tort owed by a land surveyor to a home buyer with whom the surveyor was not in contractual privity. Nonetheless, the Court established the discovery rule in a case presenting "[t]he principle that performance of a private contract can give rise to duties in tort..." *Rozny*, 43 Ill.2d at 62, 250 N.E.2d at 660. *Lipsey* applied the "discovery rule" in a case where medical malpractice was at issue and where an actual contract of employment appears to have existed. Indeed the Court noted that "[c]ontrary to the plaintiff's position, it has been held that a cause of action for medical malpractice accrues at the time of the negligent act [citation omitted]," *Lipsey*, 46 Ill.2d at 37, 262 N.E.2d at 453. Yet the Court then rejected those earlier cases in favor of the discovery rule.

It would be extraordinary for the Supreme Court to sanction one rule for plaintiffs suing doctors for malpractice and another—more restrictive—rule for plaintiffs suing lawyers for malpractice. It seems far more likely, as well as more consistent with its own precedents, to espouse the *Korvette* approach and the squarely applicable decision of the Fourth District in *Kohler v. Woollen, Brown & Haskins*, 15 Ill.App.3d 455, 460, 304 N.E.2d 677, 681 (4th Dist. 1973):

> a cause of action for legal malpractice has not accrued until the client discovers, or should have discovered, the factors establishing the elements of his cause of action.[3]

Applying that doctrine requires rejection of Potthoff's limitations defense. Under Illinois law "there is no cause of action [for negligence] until the injury or damage has occurred." *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 131, 12 Ill.Dec. 893, 898, 370 N.E.2d 804, 808 (1977). Bonanno's injury or damage—the loss of his claims against LSBC—did not truly occur until May 7, 1979[4] or more likely August 28, 1980.[5]

Common sense supports that conclusion. Had Potthoff's new lawsuit on Bonanno's behalf been decided on the merits, Bonanno simply would have suffered no "injury or damage" from the 1975 dismissal of the earlier lawsuit—hence from Potthoff's malpractice in not appealing that dismissal. Only when it was determined that such an appeal, rather than institution of a second action, was the sole means for prosecution

---

**2.** *Dolce* did not in fact hold that the discovery rule would not apply to temper the traditional "time of the negligent act" rule in appropriate circumstances. Rather it adopted, as discussed later in this opinion, a far narrower view of the *scope* of the discovery rule than *Korvette*. Its discussion of the problem plainly contemplated the discovery rule as a recognized and proper exception to the traditional rule, 60 Ill.App.3d at 128, 17 Ill.Dec. at 278, 376 N.E.2d at 277. Consequently the better reading would be that *Dolce* and *Korvette* do not really conflict on the applicability of the discovery rule to cases like the present one, but only on the effect of that application.

**3.** *Kohler* (and indeed the specific quoted language) were cited by the Illinois Supreme Court in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 135, 334 N.E.2d 160, 163 (1975), as Illinois law applying the rule of discovery (it must be assumed *properly*, given the context of the citation).

**4.** That was the date on which the trial court dismissed Bonanno's lawsuit on res judicata grounds.

**5.** That was the date on which the Illinois Appellate Court upheld the res judicata dismissal.

of Bonanno's claims against LSBC could it be known that Bonanno had sustained harm. Until the Appellate Court's decision (or at worst the trial court's decision) dismissing the second case, it was not clear that Bonanno had lost anything (except perhaps time) by Potthoff's failure to appeal. But *after* that decision it was plain that Bonanno had lost *everything* he sought to gain from the litigation.[6] Indeed the force of that analysis is supported by case law indicating that a suit brought against Potthoff *before* the Appellate Court decision might well have been dismissed as premature.[7] *See, e.g., People ex rel. Cheadle v. Chicago Title & Trust Co.*, 37 Ill.App.3d 950, 951, 346 N.E.2d 168, 169 (3d Dist. 1976).

Consequently the most probable result is that the statute of limitations did not begin to run on Bonanno's tort claim against Potthoff until August 28, 1980, for only on that date did Bonanno truly sustain legal injury or damage—final loss of his claim against LSBC—at the hands of Potthoff's negligence. By definition then that was also the date on which, in the language of the discovery rule cases, Bonanno "discover[ed], or should have discovered, the factors [here the fact of injury or damage] establishing the elements of his cause of action."

That outcome would spare the necessity of resolving what is clearly an intra-First-District conflict regarding the discovery rule. As already indicated, *Dolce* expressed its own unique perception of the discovery rule, 60 Ill.App.3d at 128, 17 Ill.Dec. at 278, 376 N.E.2d at 277:

> The discovery rule is the exception to the traditional rules, to be applied only when the discovery occurs after the statute of limitations has run or when discovery occurs at a time so near the running that the action, for all practical reasons, has been barred before a party has learned of the accrual.

That statement represents a sport in the law. It is squarely contradicted by various First District and other Appellate Court decisions that without exception calculate the running of the statute from the date of discovery (one such decision is *Korvette*, 38 Ill.App.3d at 909, 350 N.E.2d at 13) and by the uniform language in the Supreme Court cases expressing the same rule: *Nolan v. Johns-Manville Asbestos*, 85 Ill.2d 161, 171, 52 Ill.Dec. 1, 11, 421 N.E.2d 864, 868 (1981); *Witherell v. Weimer*, 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 16, 421 N.E.2d 869, 874 (1981); *Tom Olesker*, 61 Ill.2d at 136–37, 334 N.E.2d at 164; *Lipsey*, 46 Ill.2d at 40, 262 N.E.2d at 455; *Rozny*, 43 Ill.2d at 72–73, 250 N.E.2d at 665–66.[8]

**6.** This result comports with reality as the *Dolce* rule does not. Until the second lawsuit was dismissed in 1979 Bonanno had no reason to doubt that his lawyer, Potthoff, though he had not pursued an appeal in the first case (an appeal whose success could only have returned Bonanno to the trial court), had acted to save both time and money by filing another lawsuit in the trial court in the first instance.

**7.** Another perspective on the effect of *Dolce*, which would require the earlier malpractice filing, demonstrates serious policy problems generated by that holding. First it would place a premium on mistrust of the client's own lawyer—it would in essence force a continuing check with other counsel as to the validity of the advice being received, to prevent the loss of a claim for any wrongful advice given by the client's own lawyer. Second it must be remembered that once a client does sue his lawyer, continuation of the relationship is obviously untenable. Adoption of a rule different from that suggested in the text would place the

client who did learn of a possible claim on the horns of an unacceptable dilemma: He could

> (1) file a lawsuit before it is known that harm has been sustained, thus bearing the hardship that must flow from withdrawal of the original counsel familiar with the second case; or
> (2) withhold suit, taking the risk that the claim might be time-barred before counsel concluded the representation in the second case with an adverse result.

**8.** If it were necessary to choose between the alternatives, this Court would again predict the Supreme Court would reject the *Dolce* approach. Suppose the "so near" time for discovery is (say) four months before the statute of limitations would have run. *Dolce* would then produce the bizarre result that a plaintiff who discovered a cause of action four years and seven months after it arose would have *five months* in which to bring suit, whereas the plaintiff who made the discovery two months later would have *five years* to do so. By con-

In any event, if August 28, 1980 is accepted as the date on which Bonanno's cause of action accrued, his February 1981 filing of this action was timely under either approach. On the facts of this case August 28, 1980 was only *two days* before the statute could have run even under the *Dolce* theory of "accrual" already discussed in this opinion. And of course *two days* must unquestionably be "a time so near the running that the action, for all practical reasons, ha[d] been barred before [the] party ha[d] learned of the accrual."

This opinion has had to travel a longer route than the Court would have preferred, because of the conflicts with established (and sound) law posed by *Dolce*. But the conclusion of that journey is that Bonanno's Count I is not barred by Section 16's statute of limitations.

### Count II—Bonanno's Contract Claim

Potthoff's motion to dismiss Bonanno's second count, which sounds in contract, needs far less discussion. Potthoff argues that Illinois' ten-year statute of limitations for actions upon written contracts (Ill.Rev. Stat. ch. 83, § 17) does not apply. This is so, Potthoff argues, because Bonanno's contract claim is based upon a retainer agreement that does not contain the specific undertaking claimed to have been breached. *See Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100 (9th Cir. 1979) (Arizona law).

That contention is unsound. This is not a situation in which Bonanno's claim asserts only a general failure to provide reasonably competent professional services or some other broad noncontractual claim. It rather charges Potthoff with failure to perform precisely what he had contracted to do. Under the retainer agreement Potthoff undertook to represent Bonanno in the prosecution or settlement of all claims against LSBC. Count II's gravamen is that Potthoff failed so to represent Bonanno in the 1975 litigation because of the same neg-

ligent actions already discussed. Thus Bonanno's action is certainly based on the written contract and on Potthoff's non-performance of his contractual undertaking. *Cf. Stanley v. Chastek*, 34 Ill.App.2d 220, 180 N.E.2d 512 (2d Dist. 1962). Accordingly the ten-year limitation period applies to Count II.

### Conclusion

Potthoff's motion to dismiss Counts I and II of Bonanno's Complaint is denied. Potthoff is ordered to answer the Complaint on or before October 30, 1981.

---

trast the uniform result under all the other case law would give every plaintiff the same five-

year period after his claim had been discovered.