KNORR BRAKE CORP., Plaintiff,

v.

HARBIL, INC., et al., Defendants.

No. 81 C 6842.

United States District Court,
N.D. Illinois, E.D.

Oct. 27, 1982.

Richard M. Franklin, Baker & McKenzie, Chicago, Ill., for plaintiff.

Kirkpatrick W. Dilling, Dilling, Dilling & Gronek, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Knorr Brake Corporation ("Knorr Brake") has sued Harbil, Inc. ("Harbil") and P.E.P. Industries, Ltd. ("P.E.P.") for rescission, breach of contract and injunctive relief based on their alleged breach of an agreement between Knorr Brake and Harbil. Harbil has responded with a counterclaim charging Knorr Brake and its corporate parent, Knorr-Bremse GmbH ("Knorr-Bremse"), with various torts and breaches of contract and fiduciary duties. Harbil now seeks to join seven individuals as additional counter-defendants.[1] For the reasons stated in this memorandum opinion and order Harbil's motion is denied and Count V of its First Amended Counter-Complaint (the "Counter-Complaint") is stricken.

### Procedural History

Knorr Brake filed its Complaint in December 1981. On December 9 this Court entered a temporary restraining order against Harbil and P.E.P. and promptly thereafter conducted an evidentiary hearing on Knorr Brake's motion for preliminary injunction. This Court's January 28, 1982 memorandum opinion and order ("Opinion I") reflected its findings of fact and conclusions of law, as required by Fed. R.Civ.P. ("Rule") 52(a), granting the motion. It issued the preliminary injunction itself February 22, contemporaneously with a supplemental memorandum opinion ("Opinion II").

In August 1982 Harbil filed the Counter-Complaint and moved to join the seven individual "additional counter-defendants."[2] This opinion is limited to that motion.[3]

1. Harbil's original "Counter-Complaint," filed February 22, 1982 contemporaneously with its Answer and Affirmative Defenses, named only Knorr-Bremse and Knorr Brake (collectively "Knorr") as counterdefendants. Harbil now proposes to add Gregory Gagarin, Jens von Bandemer, Thomas Storzinger, Bo G. Cavell, Alexander Bodey, Joachim Vielmetter and Gerhard Kubath.

2. When initially presenting the Counter-Complaint, Harbil's counsel claimed the absolute right to add the new counterdefendants without leave of court, citing *LaBatt v. Twomey,* 513 F.2d 641, 651 (7th Cir.1975) (Knorr Brake had not yet filed a "responsive pleading" to the original Counter-Complaint). This Court pointed out that *LaBatt* specifically made clear the right to amend the pleading as a matter of course did *not* extend to the addition of new parties defendant (*id.* at 651 n. 9). As this opinion makes plain, Harbil's counsel has continued the practice of misciting authority in claimed support of Harbil's legal contentions.

3. In part Knorr responded to Harbil's motion by moving for attorneys' fees under Ill.Rev.

## Background Facts and the Counter-Complaint

This opinion will not repeat the detailed facts found in Opinion I. Briefly Knorr Brake and Harbil entered into a joint venture written contract (the "Agreement"), later supplemented by a letter of modification and extension. Under the joint venture arrangement they agreed to design, obtain regulatory approval for and market an air brake system for use on railway cars in the United States and Canada. Harbil used P.E.P. as the source of technical assistance Harbil had agreed to provide Knorr Brake under the Agreement. Knorr Brake sued Harbil and P.E.P. after the latter, independently of Knorr Brake and solely for P.E.P.'s own benefit, sought regulatory approval of the design of a principal component of the air brake system being designed by Knorr, Harbil and P.E.P. under the Agreement.

Harbil's Counter-Complaint alleges:

1. Knorr breached their fiduciary and contractual duties to Harbil (Count I).

2. Knorr were unjustly enriched by use of Harbil's technical information and trade secrets (Count II).

3. Knorr damaged Harbil's business reputation and good will (Count III).

4. Knorr-Bremse maliciously interfered with Harbil's contractual relationship with Knorr Brake (Count IV).

5. Knorr and the seven individual counterdefendants conspired to cause Harbil's cited injuries and damages (Count V).

Stat. ch. 110, § 2–611 (1982) and 28 U.S.C. § 1927. Despite this District Court's General Rule 13 and this Court's orders indicating that motion was to be briefed contemporaneously with Harbil's motion, Harbil has unilaterally declared Knorr's motion premature and failed to file its answering memorandum. At the status call announcing this opinion, this Court will require a prompt briefing by Harbil.

**4.** As Opinion I at 9 n. 8 states, Illinois law provides the rules of decision for all substantive questions in this diversity action.

6. Knorr breached the Agreement (Count VI).

Harbil alleges six of the proposed individual counterdefendants are aliens and one is a citizen of Maryland.

## Harbil's Claims Against the Individual Counterdefendants

When Harbil first tendered the Counter-Complaint for filing, this Court specifically directed it to address two issues (Aug. 17, 1982 Tr. 2, 6):

1. whether this Court may exert personal jurisdiction over the proposed individual counter-defendants; and

2. whether a conspiracy claim will lie against individuals for allegedly conspiring with their own corporation.

Harbil has been utterly unresponsive both to this Court and to Knorr's arguments on the jurisdictional issue. That issue is dispositive and will be addressed first.

Nonetheless, in light of Knorr's pending motion for attorneys' fees, this opinion will also discuss Harbil's misuse of controlling Illinois law [4] in its misguided response on the intracorporate conspiracy issue. That discussion also bears of course on the viability of Counter-Complaint Count V.

### 1. Personal Jurisdiction

Harbil alleges generally (Counter-Complaint ¶ 4) the seven individuals acted in Illinois or caused acts in Illinois. But when this Court, already familiar with the facts from the preliminary injunction hearing, directed Harbil to provide at least some threshold level of particularization as a condition to haling the individuals into court here,[5] Harbil proved totally unresponsive.

**5.** Knorr confirms (Ans. Mem. 2) the seven individuals are among its executive and technical officials. This Court's imposition of the minimal threshold burden on Harbil was intended to avoid the greater burden on the non-resident (and in all but one instance non-United States) individuals of having to come into court and move for dismissal on jurisdictional grounds, unless Harbil could first advance some colorable basis for personal jurisdiction.

Its initial supporting memorandum did not even address the jurisdictional issue as such, despite this Court's clear directive. Spurred by Knorr's responsive memorandum, Harbil now asserts (R. Mem. 13–14) jurisdiction over the seven individuals is authorized by either of two provisions of the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, § 2–209 (1982) ("Section 2–209"). Harbil claims the individuals transacted business (see Section 2–209(a)(1)) and committed tortious acts (see Section 2–209(a)(2)) in Illinois.

Harbil is of course correct to repair to Section 2–209 in this diversity action. *See State Security Ins. Co. v. Frank B. Hall & Co.*, 530 F.Supp. 94, 96 (N.D.Ill.1981). But it cannot find support there.

■ It asserts (R.Mem. 3–4, 13) the individuals had "personal contacts" and were present in Illinois in connection with the Harbil-Knorr joint venture. That claim was also dimly reflected at Counter-Complaint ¶¶ 3A and 4, again without specific names and acts. However, there is not even a suggestion the individuals ever came to Illinois or engaged in Illinois activities on their own (as opposed to Knorr's) behalf. Thus Harbil has failed completely to allege business transactions that would subject the named *individuals* to jurisdiction under Section 2–209(a)(1), for "the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person." *Hurletron Whittier, Inc. v. Barda*, 82 Ill.App.3d 443, 447, 37 Ill.Dec. 838, 841, 402 N.E.2d 840, 843 (1st Dist.1980) (interpreting the predecessor of Section 2–209(a)(1)). From Harbil's own

submissions, the named individuals have not "transacted business" in Illinois within the meaning of Section 2–209(a)(1).[6]

■ Harbil encounters a like problem in claiming the individuals committed tortious acts in Illinois. Again it identifies no specific Illinois acts by specific individuals.[7] True, the *injuries* alleged in the Counter-Complaint are financial injuries to Harbil (an Illinois corporation). But such an injurious *consequence* in Illinois does not meet the test of tortious *acts* in Illinois imposed by Section 2–209(a)(2). *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 438, 56 Ill.Dec. 657, 661, 427 N.E.2d 1203, 1207 (1981)[8] *and State Security*, 530 F.Supp. at 99 (both interpreting the predecessor of Section 2–209(a)(2)).

■ Jurisdiction over a corporation simply does not translate into jurisdiction over those with whom it may have common interests. *See Green*, 86 Ill.2d at 440, 56 Ill.Dec. at 662, 427 N.E.2d at 1208. Nor is this conclusion altered by the charge of a conspiracy among the corporate and proposed individual counterdefendants. No "agent" for any individual is alleged to have committed the requisite and specific Illinois tortious acts that might be attributable to his or its "principal." *See id.*, 86 Ill.2d at 440–41, 56 Ill.Dec. at 662, 427 N.E.2d at 1208.

### Intracorporate Conspiracy

■ Harbil quotes (R.Mem. 2) this Court's specific directive that counsel address the "intracorporate conspiracy issue," a directive sparked by Harbil's tender of Counter-Complaint Count V. Illinois courts

---

**6.** In *State Security*, 530 F.Supp. at 97–98 this Court reached the identical conclusion on similar facts, though its discussion was not limited to the predecessor of Section 2–209(a)(1). *State Security* rather spoke in terms of the "fiduciary shield" theory (as reflected in Illinois cases, including *Hurletron Whittier*, though not under that label) as a general bar to exerting long-arm jurisdiction over individuals for their representative acts. In addition, this Court reached a parallel conclusion on the personal jurisdiction issue conceived as a question of due process fairness, again citing *Hurletron Whittier* among other cases.

**7.** In general Harbil's tort counts speak of the kind of corporate actions or decisions likely to have been "committed" or "made" at the Knorr corporations' principal places of business in Maryland and Germany.

**8.** *Green* was brought to Harbil's attention by *Knorr* (Ans. Mem. 8 n.*). Astonishingly, Harbil chose not to respond to the problem posed by *Green* (R. Mem. 13–15). Instead Harbil continued to invoke pre-*Green* authority.

have consistently held "in a tort action, a civil conspiracy cannot exist between a corporation and its agents or employees since the acts of an agent are considered to be the acts of the principal." *Bonanno v. LaSalle & Bureau County R.R.,* 87 Ill.App.3d 988, 995, 42 Ill.Dec. 866, 891, 409 N.E.2d 481, 486 (3d Dist.1980). *See also, e.g., John Deere Co. v. Metzler,* 51 Ill.App.2d 340, 355, 201 N.E.2d 478, 486 (4th Dist.1964).

Harbil was better, though, at quoting than at understanding the Court's question. Its initial memorandum was devoted largely to presently irrelevant issues: whether a corporation can conspire at all, and whether a conspiracy can be inferred from surrounding events.[9] It also talked about a quite different (but equally inapt) question: whether individuals might be liable for malicious interference with their own corporation's contracts. After all, the individuals were not named in Counter-Complaint Count IV (which charges Knorr-Bremse maliciously interfered with the Agreement), but rather in Count V.

Even on the contract interference non-issue, however, Harbil has played fast and loose with Illinois law. It first cited *Mellor v. Budget Advisors, Inc.,* 415 F.2d 1218, 1221 (7th Cir.1969), in which our Court of Appeals briefly discussed the question of the scope of a corporate officer's good faith "privilege" to interfere with his own corporation's contracts (emphasis added):

> We think that application of the good faith test requires consideration of the existence and reasonableness of the director's belief at the time he voted that the corporate act was not a breach of contract *or that the interest of the corporation would be served even if it was a breach.*

Harbil sought comfort in *Mellor*'s citation of an Illinois case that found corporate officers could be personally liable for "wilfully and maliciously" inducing their corpora-

tion's breach of contract. *W.P. Iverson & Co. v. Dunham Manufacturing Co.,* 18 Ill. App.2d 404, 417, 152 N.E.2d 615, 621 (1st Dist.1958). Though Harbil has not in fact alleged wilfulness or malice by the individuals,[10] it apparently saw in *Iverson* authority for narrowing the scope of the corporate official's "privilege" to interfere with corporate contracts.

What Harbil did not say was that the *Iverson* analysis has since been specifically disapproved by the Illinois Supreme Court. *Swager v. Couri,* 77 Ill.2d 173, 190–91, 32 Ill.Dec. 540, 547, 395 N.E.2d 921, 928 (1979). Moreover, *Swager* has led to at least one recent case in which, on facts similar to those here, an Illinois court has refused to find the requisite "malicious" interference where corporate officers have acted only in their corporation's interest. *Baker, Bourgeois & Associates, Inc. v. Taylor,* 84 Ill. App.3d 909, 915, 43 Ill.Dec. 55, 60, 410 N.E.2d 55, 60 (1st Dist.1980). *See also Idlehour Development Co. v. City of St. Charles,* 88 Ill.App.3d 47, 50–52, 42 Ill.Dec. 929, 932–933, 409 N.E.2d 544, 547–48 (2d Dist.1980).

Undaunted, Harbil's reply memorandum attempts to distinguish Knorr's references to *Swager, Baker, Bourgeois* and *Idlehour Development.* Harbil's analysis is as faulty as its reliance on the discredited *Iverson* doctrine. What matters really comes down to is that Harbil's counsel are simply unwilling to acknowledge the untenability of having tendered *Iverson* as good authority. And when they assert (R.Mem. 11) a Second Circuit case interpreting New York law is "controlling," this Court can conclude only that they are well aware of the indefensibility of the position they have taken.

## Conclusion

In summary, Harbil first ignored the jurisdictional issue and then failed to focus on

---

**9.** Harbil also took the opportunity simply to repeat its Counter-Complaint's allegations in its memorandum. That added nothing to the analysis.

**10.** At most Harbil (not in the Counter-Complaint but at its Mem. 6–7) charges the corporate officers may have acted in self-interest. Even there the claimed "self-interest" turns into an interest in advancing corporate interests and cutting corporate costs.

the actual legal issues and precedents involved. As for the intracorporate conspiracy issue, Harbil never faced the true question, and it seriously misused and abused precedent on the question it sought to substitute for discussion.

Harbil has not shown the proposed individual counterdefendants are subject to the jurisdiction of this Court. Its motion to join them is denied. Counter-Complaint Count V is stricken for the reasons already stated.