738 F.2d 223
 KNORR BRAKE CORP., a Delaware corporation, Plaintiff-Appellee,
v.
HARBIL, INC., an Illinois corporation, and P.E.P.
Industries, Ltd., Defendants.
Appeal of Kirkpatrick W. DILLING, Dennis M. Gronek, and
Robert E. Armstrong, Appellants.
 No. 83-1318.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 23, 1984.
Decided June 29, 1984.
 
 Kirkpatrick W. Dilling, Dilling, Dilling & Gronek, Chicago, Ill., for appellant.
 Michael J. Garvey, Baker & McKenzie, Chicago, Ill., for plaintiff-appellee.
 Before PELL, and FLAUM, Circuit Judges, and HENLEY, Senior Circuit Judge.*
 FLAUM, Circuit Judge.
 
 
 1
 This appeal raises the issue of whether the district court abused its discretion in assessing attorneys' fees against the appellant attorneys pursuant to 28 U.S.C. Sec. 1927 (1982). We conclude that the record is not adequate to support an award of fees, and thus, we reverse the judgment and remand for a new determination of whether an award of attorneys' fees is appropriate.
 
 
 2
 * On December 8, 1981, Knorr Brake Corporation brought a breach of contract suit against Harbil, Inc., and P.E.P. Industries, Ltd. Mr. Dilling, Mr. Gronek, and Mr. Armstrong, appellants here, entered their appearances as counsel for the defendants. Defendants answered the complaint and Harbil simultaneously filed a countercomplaint against Knorr Brake and Knorr-Bremse GmbH, Knorr Brake's West German corporate parent (hereinafter collectively "Knorr"). Harbil alleged, inter alia, breach of fiduciary duty, and it sought damages and equitable relief. Knorr moved to dismiss the countercomplaint; the motion later was converted to one for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.
 
 
 3
 On August 12, 1982, Harbil filed its First Amended Countercomplaint, designating seven proposed individual counterdefendants. The seven individuals were employees of Knorr; six were aliens and one was a citizen of Maryland. That same day, Harbil filed a motion to join the additional counterdefendants.
 
 
 4
 Count V of the amended complaint contained the allegation against the individuals:
 
 
 5
 [T]he corporate and individual counterdefendants have conspired, agreed and acted in concert, the individuals proceeding therein as individuals, to cause the consequences, injury and damages specified in Counts I, II, III, and IV hereof to occur.
 
 
 6
 Count V also alleged that the actions complained of were at the instigation of and for the benefit of two other Knorr corporations, Knorr-Bremse/South Africa and Knorr-Bremse/Brazil. The amended countercomplaint alleged that Knorr-Bremse GmbH had engaged in specified activities within Illinois and that each individual counterdefendant was subject to personal jurisdiction either by doing acts within Illinois and/or by causing such acts to be done within Illinois.
 
 
 7
 On August 17, 1982, the court held a status hearing. At that time, the court instructed Harbil's counsel that before it would grant leave to add the individual defendants, counsel
 
 
 8
 ought to be in a position to make at least some threshold showing about the potential jurisdiction over the group of individuals that you are now seeking to add, and also dealing with the question whether a claim for conspiracy will lie when we are dealing with a group of individuals and their corporation, that is, in what amounts to an intracorporate conspiracy ....
 
 
 9
 Transcript of August 17 Status Hearing at 2. The court established a briefing schedule.
 
 
 10
 On September 1, 1982, Harbil's counsel filed a memorandum in support of its motion to add the individuals. That memorandum did not discuss the issue of personal jurisdiction; it did discuss cases relating to conspiracy. On September 13, Knorr filed its responsive memorandum and a motion for attorneys' fees. Knorr claimed that the cases cited by Harbil had been overruled. The district court ordered Harbil to respond to the memorandum and to the motion.
 
 
 11
 Harbil filed its reply memorandum. Harbil stated that it would not respond at that time to Knorr's motion for fees because the district court had not yet ruled on the motion to add the additional parties. As to jurisdiction, Harbil cited provisions of the Illinois long-arm statute, repeated the allegations of its countercomplaint, and named two of the proposed defendants as being present in Illinois to execute the underlying agreement. Harbil also cited an Illinois case regarding personal jurisdiction as to co-conspirators. Harbil distinguished the cases cited by Knorr.
 
 
 12
 On October 27, 1982, the district court denied Harbil's motion to add the additional counterdefendants. Knorr Brake Corp. v. Harbil, Inc., 550 F.Supp. 476 (N.D.Ill.1982) [hereinafter cited as Knorr I ]. The court held that Harbil had not supported personal jurisdiction under the Illinois long-arm statute. The court also held that Harbil had not supported its claim of intracorporate conspiracy.
 
 
 13
 The appellants withdrew as Harbil's counsel in the case for all purposes except as to the motion for attorneys' fees. The parties then briefed the attorneys' fees issue. The district court did not hold a hearing before deciding to impose fees. The district court awarded attorneys' fees to Knorr and ordered appellants personally to satisfy the award. Knorr Brake Corp. v. Harbil, Inc., 556 F.Supp. 484 (N.D.Ill.1983) [hereinafter cited as Knorr II ]. The court fixed the amount of the award at $6,914.50. At some later point, Knorr and Harbil settled the underlying lawsuit.
 
 
 14
 On appeal, appellants argue that the court abused its discretion in awarding fees. Appellees argue that fees were appropriate because the motion to join the individuals was frivolous, and appellants miscited precedent and failed to comply with the district court's specific orders.
 
 II
 
 15
 We first must address the issue of our jurisdiction to hear this appeal. Knorr argues that an order awarding attorneys' fees in a non-common fund case is not appealable where there has been no judgment on the merits of the underlying lawsuit. Appellants argue that the order here is appealable as a collateral order.
 
 
 16
 This court recently accepted the proposition that an order assessing attorneys' fees against a party's former counsel was appealable when entered even though there had been no judgment on the merits. Tamari v. Bache & Co. (Lebanon) S.A.L., 729 F.2d 469 (7th Cir.1984). Tamari involved an assessment of attorneys' fees under Rule 37 of the Federal Rules of Civil Procedure for failure to comply with a discovery order.
 
 
 17
 Other circuits have held that an order assessing fees under section 1927 is appealable when entered. Cheng v. GAF Corp., 713 F.2d 886, 887, 888-90 (2d Cir.1983); Mesirow v. Pepperidge Farm, Inc., 703 F.2d 339, 345 (9th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983). We agree.
 
 
 18
 To be appealable as a collateral order, an order must meet three criteria. "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The order here, assessing attorneys' fees and setting the amount of fees, was a conclusive determination. The fee award is completely separate from the merits of the case. The Supreme Court has noted, "[F]ee requests are not inherently or necessarily subsumed by a decision on the merits." White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166 n. 13, 71 L.Ed.2d 325 (1982). Here, the award was assessed against nonparties who no longer have any connection to the case, and as such, it is unconnected to the merits of the underlying lawsuit. Finally, the fee award is not effectively reviewable on appeal from the final judgment on the underlying suit. When the fees were assessed, there was a possibility that the appellants' former client ultimately would prevail on the merits or that the case would be settled. It is not clear that in either event the appellant attorneys, who are no longer connected to the merits of this case, would be able to appeal from the final judgment. Thus, we conclude that the award of attorneys' fees here is appealable as a collateral order.
 
 III
 
 19
 The district court assessed attorneys' fees against appellants based on 28 U.S.C. Sec. 1927 (1982). Section 1927 provides:
 
 
 20
 Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
 
 
 21
 Section 1927 clearly is punitive and thus must be construed strictly. Badillo v. Central Steel & Wire Co., 717 F.2d 1160, 1166 (7th Cir.1983). A court may impose section 1927 fees only to sanction needless delay by counsel. Reid v. United States, 715 F.2d 1148, 1154 (7th Cir.1983). The purpose of section 1927 is to penalize attorneys who engage in dilatory conduct. House Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S.Code Cong. & Ad.News 2781, 2782 ("Conference Report"). To be liable under section 1927, counsel must have engaged in "serious and studied disregard for the orderly process of justice." Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 795 (7th Cir.1983) (quoting Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir.), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969)). Where, as here, counsel's alleged misconduct was the filing and arguing of a claim,[1] it is not sufficient that the claim be found meritless; the claim must be without a plausible legal or factual basis and lacking in justification. Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d at 794-95; see Tuf-Flex Glass v. NLRB, 715 F.2d 291, 298 (7th Cir.1983).
 
 
 22
 This court has not required an express finding by the district court of subjective bad faith or intent to delay to support an award of fees under section 1927. However, the court has indicated consistently that some degree of culpability on the part of counsel is required. Badillo v. Central Steel & Wire Co., 717 F.2d at 1166; Reid v. United States, 715 F.2d at 1154; Tuf-Flex Glass v. NLRB, 715 F.2d at 298; Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d at 794-95; Maneikis v. Jordan, 678 F.2d 720, 722-23 (7th Cir.), cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982); cf. McCandless v. Great Atlantic & Pacific Tea Co., 697 F.2d 198, 200-02 (7th Cir.1983). Although these cases are not entirely consistent in their descriptions of the degree of required culpability, they are fairly consistent in their results. The cases can be divided into two groups. In the first group of cases, the result rests ultimately on the ground that the claim had some sort of plausible basis, and thus fees were not allowed. See Badillo v. Central Steel & Wire Co., 717 F.2d at 1166 (although case presented no genuine issue of material fact, it was not an "extreme example"); Tuf-Flex Glass v. NLRB, 715 F.2d at 298; Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d at 794-95. In the second group of cases, where the court found no plausible basis for the claim, the court either implicitly or explicitly found some showing of intentional misconduct before allowing fees. See Reid v. United States, 715 F.2d at 1154 (fees not assessed because no delay); Maneikis v. Jordan, 678 F.2d at 722-23 (counsel "must have known" that the claim lacked merit); cf. McCandless v. Great Atlantic & Pacific Tea Co., 697 F.2d at 201 (district court explicitly found bad faith).[2] Thus, before a court may assess fees under section 1927, the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis.[3] The court, however, need not find that the attorney acted because of malice. See id. at 200-01.
 
 
 23
 We believe that a rule permitting the imposition of attorneys' fees only where the attorney intentionally acts without a plausible basis is proper.[4] Such a rule protects three important interests. First, is the societal interest in encouraging free access to the courts. Second is the interest of the client in obtaining legal counsel who otherwise might be chilled from taking a close case. Third is the lawyer's ethical obligation to represent his or her client zealously within the bounds of the law. Congress, in allowing attorneys' fees to be assessed under section 1927, was concerned "that the provision ... in no way dampen the legitimate zeal of an attorney in representing his client." Conference Report at 8.
 
 
 24
 In determining whether an attorney acted intentionally, a court need not rely solely on direct evidence of the attorney's subjective knowledge. A court may infer intent from a total lack of factual or legal basis for a suit. See McCandless v. Great Atlantic & Pacific Tea Co., 697 F.2d at 201. A court may also look to extrinsic or circumstantial evidence, such as research memoranda or letters to the client. Finally, a court should provide counsel with some opportunity to be heard. See United States v. Blodgett, 709 F.2d 608 (9th Cir.1983); Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980) (sanctions should not be assessed "without fair notice and an opportunity for a hearing on the record"); Conference Report at 8 (counsel entitled to "all appropriate protections of due process available under the law"). In the absence of an express finding of intent by the district court, this court may sustain an award of fees under section 1927 where counsel's intent is clear from the facts in the record.
 
 
 25
 A careful review of the district court's opinions in this case reveals that the court considered the following factors in assessing fees against appellants. According to the court, counsel initially failed to address certain issues despite being directed to do so by the court. Counsel persisted in ignoring the legal issues and controlling precedents and in repeating arguments previously rejected by the court. Finally, counsel miscited a case to the court. The court did not make any express or implicit findings as to appellants' culpability. The court refused to find that appellants acted to harass Knorr. The court variously attributed counsel's alleged failings to "confusion or recalcitrance," "refusal to admit" that legal positions were incorrect, and "defiance of precedent and ... disregard of the issues." Knorr II, 556 F.Supp. at 487-88. We turn to an examination of the factors relied on by the district court.
 
 Filing of Amended Countercomplaint
 
 26
 The district court in its opinion stated that counsel at a status hearing had cited LaBatt v. Twomey, 513 F.2d 641 (7th Cir.1975), for the proposition that Harbil had an absolute right to add new counterdefendants without leave of court. Our review of the record reveals that the district court was mistaken. The status hearing was held on August 17, 1982. Counsel had filed with the court both an amended countercomplaint and a motion to add additional parties. At the status hearing, counsel for Knorr stated that Harbil could file the amended countercomplaint only with leave of court because Knorr had filed a motion to dismiss, which constituted a responsive pleading.[5] Counsel then cited LaBatt v. Twomey for the proposition that a motion to dismiss converted to a motion for summary judgment is not a responsive pleading and thus he could file an amended countercomplaint as a matter of right. The court took a recess, read the LaBatt decision, and told counsel that LaBatt did not allow the adding of new defendants without leave of court. The following exchange then took place:
 
 
 27
 [Counsel]: May I say this, your Honor. For that purpose, hopefully following protocol and procedure, we are bringing on this morning, before your Honor as your Honor will note, a motion for leave to add these additional parties.
 
 
 28
 The Court: I understand.
 
 
 29
 [Counsel]: So we didn't assume we could just do that as a matter of course.
 
 
 30
 Transcript of Status Hearing of August 17, 1982, at 6. It is evident that counsel did not claim that he had an absolute right to add new parties without leave of court.[6] The district court clearly erred when it stated that he had, and thus it was an abuse of discretion to consider this in awarding fees.[7]
 
 Failure to Comply with Court's Orders
 
 31
 On two occasions, Harbil failed to comply with the court's order to address a particular issue: in its initial memorandum in support of its motion, when it failed to discuss personal jurisdiction; and in its reply memorandum, when it failed to discuss attorneys' fees. We hold that it was appropriate for the district court to consider this in determining whether to assess fees. A lawyer's failure to comply with a court order can be sufficient grounds to impose fees. Tamari v. Bache & Co. (Lebanon) S.A.L., 729 F.2d 469, 473-74 (7th Cir.1984). The district court in this case did not determine whether appellants' failure was intentional and for purposes of delay. From the record before us on appeal, we cannot determine why appellants failed to discuss these issues. On remand, the district court should make such a determination.
 
 
 32
 Failure to Comply with Court's Instructions
 
 
 33
 At the August 17 status hearing, the court instructed Harbil's counsel:
 
 
 34
 [I]t seems to me that you ought to be in a position to make at least some threshold showing about the potential jurisdiction over the group of individuals that you are now seeking to add, and also dealing with the question whether a claim for conspiracy will lie when we are dealing with a group of individuals and their corporation, that is, in what amounts to an intracorporate conspiracy ....
 
 
 35
 Transcript at 2 (emphasis supplied). In its initial memorandum, Harbil did not discuss the personal jurisdiction issue. On the conspiracy issue, Harbil discussed the tort of malicious interference with contract. In its reply memorandum, Harbil stated its theory that personal jurisdiction would lie under the "transaction of any business" and the "commission of a tortious act" provision of the Illinois long-arm statute[8] and that the court has jurisdiction over co-conspirators based on the acts of one conspirator. Harbil also named two individuals as being present in Illinois to negotiate and execute the underlying agreement. Harbil argued that it was alleging an intercorporate as opposed to an intracorporate conspiracy.
 
 
 36
 The district court, in Knorr I, held that Harbil had not shown that the court had personal jurisdiction over the proposed individual counterdefendants. The court stated that Harbil had failed to allege business transactions in Illinois by the individuals on their own behalf. Similarly, Harbil had failed to allege specific tortious acts in Illinois by specific individuals. The court found that Harbil had not addressed the issue of intracorporate conspiracy but instead focused on irrelevant issues and cited a case that had been overruled.
 
 
 37
 We find that counsel's performance in its reply memorandum as to personal jurisdiction was not so far below what the district court had ordered at the status hearing that the court could impose sanctions. The court apparently expected Harbil to make a prima facie showing of personal jurisdiction by identifying specific Illinois acts by specific individuals. The court, however, merely stated that it wanted Harbil to demonstrate a threshold showing of potential jurisdiction. Harbil could, and perhaps should, have provided a more specific showing. Informing the court of its theory, however, was sufficient compliance with the court's rather broad order so as not to constitute disobedience.
 
 
 38
 We turn to the district court's consideration of counsels' performance on the corporate conspiracy issue. The court viewed this as a case of intracorporate conspiracy.[9] However, Harbil stated that it was alleging the existence of an intercorporate conspiracy.[10] Harbil pointed this out in its reply memorandum. Neither of the court's opinions addressed the issue of intercorporate conspiracy. Counsel's attempts to distinguish the cases cited by Knorr and the court's rejection of this may have been based on this misunderstanding. Similarly, Harbil's focus on the issue of malicious interference with contract may have been based on a misunderstanding rather than intent.
 
 
 39
 On the record before us, we cannot determine whether Harbil's position on the issues lacked a plausible legal or factual basis. As we have noted, at the time the court imposed fees, counsel only had outlined its theory of personal jurisdiction. At that point it was too early to determine whether Harbil could have shown any set of facts on which personal jurisdiction could be based. Similarly, we cannot say whether Harbil's claim of intercorporate conspiracy lacked a plausible basis. On remand, therefore, the district court must determine whether the claims lacked a plausible basis and whether counsel acted intentionally.
 
 
 40
 Based on the foregoing, we reverse the judgment of the court in awarding fees, and we remand for a determination of whether an award of attorneys' fees assessed against appellants is appropriate consistent with this opinion. Each party shall bear its own costs in this court. Circuit rule 18 shall apply on remand.
 
 
 41
 PELL, Circuit Judge, concurring.
 
 
 42
 I concur in the majority opinion although I do so with some hesitation, indeed, with reluctance. I concur because the majority opinion sets forth one error in the district court's basis for its order plus other areas which arguably justify further exploration. The majority opinion also furthers the policy that courts should have some hesitancy in assessing opponent's attorney fees against an attorney; otherwise we would, inter alia, be dampening "the legitimate zeal of an attorney in representing his client."
 
 
 43
 On the other hand, and therefrom arises my reluctance, I think the time has come that we should be increasingly hesitant to set aside a trial judge's order of fees in the situation where the reasons for the order have been articulated as Judge Shadur did here. No judge, but particularly trial judges, can be unaware of the growth of litigation not only in volume of cases per se but in cases of questionable merit. Our society has truly been termed a litigious one. Lawyers should be chilled from bringing cases to court which objectively any competent lawyer should know were meritless. Intentionally doing so makes the case for assessment of fees more clear but the time has come, it seems to me, for the application of objective standards, not only by the trial court but also by the reviewing court which should give due deference to the trial court's being with the case on a much more intimate basis than we can be.
 
 
 44
 There are, of course, many legitimate cases in the courts but they suffer detriment because of the overcrowding of dockets by other cases that should never have been brought in the first place. Summary judgment procedure can dispose of many of these but those that survive by virtue of counsel's ingenuity, or for other reasons, can, and do, produce situations of delay, patently incorrect legal theories, factual misrepresentations, failure to comply with court orders, or misfeasance or nonfeasance in many other respects, all too familiar to trial judges. Some of these situations developed before Judge Shadur and he dealt with them in a firm manner. I trust that district judges will not be discouraged from doing so in the future by the reversal in this case. While we may not want to chill attorneys from taking a close case we likewise, it seems to me, do not want to chill the trial judges from using section 1927 in proper cases. Its use could be a salutary force in curbing the present proliferation of litigation.
 
 
 45
 In the present case, after further exploration, it may well be determined that the assessment of fees was appropriate.
 
 
 
 *
 The Honorable J. Smith Henley, Senior Circuit Judge for the Eighth Circuit, is sitting by designation
 
 
 [1]
 An assessment of fees under Sec. 1927 may be appropriate in other situations, such as improper procedural conduct
 
 
 [2]
 In Maneikis v. Jordan, 678 F.2d 720, 722 (7th Cir.), cert. denied, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982), the court opined that the attorney's actions were due to his "incompetence or obstinancy." The court, however, went on to find that counsel acted intentionally. Thus, any suggestion that fees may be imposed for incompetence was purely dictum
 
 
 [3]
 Because the district court relied solely on Sec. 1927, we do not reach the issue of a court's power to assess attorney's fees where an attorney's claim has a plausible basis but he or she acts for improper or malicious purposes
 
 
 [4]
 See Comment, Awards of Attorneys' Fees Against Attorneys: Roadway Express, Inc. v. Piper, 60 B.U.L.Rev. 950 (1980)
 
 
 [5]
 See Fed.R.Civ.P. 15(a) ( "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served ...")
 
 
 [6]
 On appeal, Knorr emphasizes that Harbil's motion was titled "Motion to Join Additional Counter-defendants," rather than "Motion for Leave to Join." Knorr argues that Harbil thus showed that it thought that it had an absolute right to add parties. We do not regard the difference as controlling. Moreover, it is clear that Knorr understood the motion as one requesting leave of court. Appellees' Appendix at 15-16
 
 
 [7]
 In light of our finding that counsel cited LaBatt v. Twomey for the proposition that Harbil could amend its countercomplaint, we do not regard counsel's failure to provide the district court with a complete copy of the opinion as significant
 
 
 [8]
 The Illinois long-arm statute provides in pertinent part:
 Acts submitting to jurisdiction--Process.
 (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
 (1) The transaction of any business within this State;
 (2) The commission of a tortious act within this State;
 * * *
 (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.
 Ill.Rev.Stat. ch. 110, Sec. 2-209(a)(1), (2), (c) (1983).
 
 
 [9]
 Harbil alleged that the individual and corporate counterdefendants had conspired "at the instigation" of Knorr-Bremse/Brazil and Knorr-Bremse/South Africa. Read liberally, Harbil's allegation is that the Brazil and South Africa corporations were co-conspirators
 
 
 [10]
 Under Illinois law, a civil conspiracy cannot exist among a corporation and its employees. See Bonanno v. LaSalle and Bureau County R. Co., 87 Ill.App.3d 988, 995, 42 Ill.Dec. 866, 871, 409 N.E.2d 481, 486 (1980). A civil conspiracy can exist among corporations. See People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill.2d 300, 58 Ill.Dec. 754, 430 N.E.2d 1005 (1981). It is not clear whether under Illinois law a conspiracy can exist among a corporation and employees of a related corporation