**Shirley FRAZIER, et al.,
Plaintiffs-Appellees,**

**v.**

**Allen CAST, et al., Defendants,**

**and**

**Richard M. Daley, State's Attorney of
Cook County, Illinois,
Defendant-Appellant.**

**No. 84–2330.**

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1985.

Decided Aug. 20, 1985.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1985.

F. John Cushing, III, Ambrose & Cushing, Chicago, Ill., for plaintiffs-appellees.

Iris E. Sholder, Asst. State's Atty., Chicago, Ill., for defendants/defendant-appellant.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and TIMBERS, Senior Circuit Judge.[*]

CUMMINGS, Chief Judge.

Counsel for defendant Cook County Deputy Sheriff Alan Kulovitz, the State's Attorney of Cook County Richard M. Daley, appeals from the court below's imposition of $400 in attorney's fees as a sanction under Fed.R.Civ.P. 11. This sanction was imposed upon Mr. Daley under the *respondeat superior* doctrine for an infraction by Assistant State's Attorney David S. Allen ("appellant"). For the reasons discussed herein, we affirm the judgment of the district court.

[*] The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

## I

On the evening of September 13, 1980, Fred Frazier was barricaded in his father-in-law's house in Sauk Village, Illinois, where Frazier was living with his family, in order to avoid arrest for an alleged traffic violation. Frazier was a convicted felon, and that evening was armed with a large hunting knife and appeared to be intoxicated. The officers outside the house described Frazier to Deputy Sheriff Kulovitz as a 230-pound motorcycle freak who could "punch-press" 300 pounds and who had a history of violence, at one time having put six police officers in the hospital when resisting arrest. The Sauk Village police had requested outside assistance in their attempt to arrest Frazier. At least two officers with the Cook County Sheriff's Department, including Kulovitz, and two Illinois state troopers had responded to this call and were on the scene in the early morning hours of September 14. Frazier was not responding to any of the officers' attempts to persuade him to abandon his resistance, and finally the officers present decided that tear gas would have to be used.

The tear gas was deployed and quickly filled the house with white smoke. The officers had been careful to gas the basement to prevent Frazier from retreating there and then being trapped by the smoke. The front and back doors were left open to allow Frazier a path of escape, although officers were stationed by both doors to take him into custody once he emerged. Not only does tear gas act as an irritant, causing one to tear and sweat profusely, but the chemical displaces the oxygen in the air, so that a person refusing to leave an area filled with tear gas would soon suffocate. Despite the significant discomfort imposed by tear gas, Frazier still refused to leave the house.

Some ten minutes passed, and fans were set up to try to ventilate the house. After an additional five or ten minutes, defendant Kulovitz and another officer, state trooper Yoways, ventured into the basement where those present believed Frazier to be, to try

to bring him out. The two proceeded cautiously, because they knew Frazier could be dangerous and thought he might be lying in wait for them.

Frazier was indeed in the basement, underneath an overturned couch that had caught on fire. Kulovitz and Yoways were unable to drag Frazier, who was unconscious, out of the house. Other officers present did so, and Frazier was given medical assistance and carried to an ambulance. Nonetheless he later died of his injuries. His wife and children filed this civil rights suit against various police officers and municipalities connected with the incident.

In response to the lawsuit, defendants filed several pretrial motions, including a summary judgment motion by defendant Kulovitz. In his reply brief to plaintiffs' answer to his motion for summary judgment, Kulovitz argued through appellant counsel that exigent circumstances justified his warrantless entry into the house to save Frazier. On April 13, 1984, the court below gave plaintiffs an opportunity to respond to this argument. The judge's examination of these papers and the underlying deposition testimony convinced him that Kulovitz's argument of exigent circumstances was not well grounded in fact. In an opinion dated June 13, 1984, the court ordered Kulovitz's appellant counsel to show cause why he should not be assessed sanctions under Fed.R.Civ.P. 11. Appellant's response to the order to show cause persuaded the district court to order him to pay $400 to plaintiffs' counsel for four hours legal work (instead of the seventeen hours claimed) occasioned by Kulovitz's baseless argument proffered by appellant counsel. His signature on Kulovitz's motion for summary judgment and supporting reply memorandum was held to violate the certificate requirement of Rule 11, *infra* p. 262. Counsel now appeals this July 9 order.

## II

■ An order imposing sanctions is a non-final order, so that we must determine whether it falls within the narrow category

of collateral orders appealable pursuant to 28 U.S.C. § 1291 under the rule of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The order must meet three requirements. It "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (footnote omitted).

■ The order here satisfies these conditions. The assessment of $400 for plaintiffs' attorney's fees was a conclusive determination. It also was completely separate from the merits, because the dispositive inquiry is what the facts appeared to be to the assistant state's attorney handling the case at the time. The ultimate outcome of the lawsuit, whether favorable to plaintiffs or not, cannot affect this determination. Cf. *White v. New Hamphire Department of Employment Security*, 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166, n. 13, 71 L.Ed.2d 325 (1982) (recognizing that an award of attorneys' fees under 42 U.S.C. § 1988 is separable from main action because it implicates different legal issues). Finally, because the sanctions are imposed against a non-party, the order is not reviewable on appeal from a final judgment. The parties may settle, so that the district court could never enter a final judgment. Alternatively Kulovitz could elect not to appeal whatever final determination is made, thereby possibly precluding his attorney from appealing the sanction order.

■ Our decision accords with two recent decisions of this Court. In *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984), an important factor leading to the Court's allowing appeal from a collateral order imposing attorney's fees under 28 U.S.C. § 1927 was that the sanctions were assessed against a non-party, who might not be able to appeal from the final judgment. Accord *Tamari v. Bache*

*& Co. (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir.1984) (attorney's fees assessed against a non-party under Fed.R.Civ.P. 37 immediately appealable). In *Mulay Plastics, Inc. v. Grand Trunk Western Railroad*, 742 F.2d 369, 370–371 (7th Cir. 1984), certiorari denied, —— U.S. ——, 105 S.Ct. 1409, 84 L.Ed.2d 798, we did hold that an order imposing sanctions for abuse of discovery pursuant to Fed.R.Civ.P. 37, including attorney's fees, was not appealable when entered. But there the sanctions were assessed against one of the parties to the action, not against a non-party. The panel specifically distinguished *Knorr Brake Corp. v. Harbil, Inc.*, supra, on this ground. *Id.* at 371. Similarly, when a district court imposes sanctions against a non-party under Fed.R.Civ.P. 11, that order is appealable when entered.[1] Indeed at oral argument plaintiffs' counsel seemingly conceded our jurisdiction to review the sanctions order.

## III

■ Since this Court has jurisdiction under the collateral order exception to 28 U.S.C. § 1291, we may review the merits. Fed.R.Civ.P. 11 provides in relevant part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law * * *. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, * * * an appropriate sanction, which may include * * * a reasonable attorney's fee.

The substantial familiarity of the trial court with the proceedings renders its decision to impose sanctions reversible only for

---

**1.** Of course, the issue is not before us and we do not decide whether sanctions imposed under Fed.R.Civ.P. 11 against an attorney and a party, or a party alone, would be appealable under *Cohen, supra.*

an abuse of discretion. *Gieringer v. Silverman*, 731 F.2d 1272, 1281 (7th Cir.1984); *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 748 (5th Cir.1984). Consequently our review is quite limited. Here there was adequate support for the trial court's imposition of sanctions.

At issue is whether appellant's argument that Kulovitz entered the house to save Frazier's life was well grounded in fact. Rule 11 was amended in 1983, along with a general revision of the Federal Rules, in order to expand its reach and "reduce the reluctance of courts to impose sanctions." Fed.R.Civ.P. 11 advisory committee note. The standard is an objective one. *Id.; Pudlo v. Director, I.R.S.*, 587 F.Supp. 1010, 1011 (N.D.Ill.1984).

Available to appellant counsel in preparing Kulovitz's defense was his deposition concerning the events in question and the deposition of defendant John Orsini who had entered the house after Kulovitz. The trial court's review of the deponents' statements in their own words of what happened in the early morning hours of September 14, 1980, convinced him that appellant counsel could not reasonably have believed that Kulovitz entered the house in response to an emergency and to save Frazier's life, but rather was otherwise motivated.

Appellant counsel has contended that "it is undisputed that Officer Kulovitz entered the house to locate Frazier in an attempt to save his life" (presumably either from a fire in the house or from the effects of the tear gas itself). Defendant Kulovitz Reply Memo. in Support of His Motion for Summary Judgment at 3, quoted in Memo. Opinion of June 13, 1984, at 2. Several factors contradict this allegation. First, neither Orsini nor Kulovitz ever saw any black smoke, which would indicate a fire within the house. They saw only the white smoke from the tear gas. Memo. Opinion of June 13, 1984, at 4–5 (Appellant's App. A–37–A–38). Consequently they did not enter because they feared a fire in the basement. Of course the amount of tear gas in the house and the length of time Frazier had been inside could still justify the officers' entering to save Frazier's life—but only if that was indeed why they entered.

■ A review of Kulovitz's deposition testimony does not suggest any such motivation.[2] Kulovitz entered the house three times to attempt to find Frazier. The first time was approximately ten minutes after the tear gas had been thrown into the house, while Kulovitz was stationed with state trooper Yoways by the front door with a piece of clothesline to trip Frazier up if and when he emerged from the house. The house was silent, Frazier making no noise or response to the tear gas and the officers' calls for him to surrender. Such silence was extraordinary in Kulovitz's experience. Kulovitz Dep. 71–72. Kulovitz testified that at that point, "Trooper Yoways apparently was getting impatient, said, 'Let's go in and get him.' And I said, 'Good idea.'" *Id.* at 72. But the two exited the house after taking about two steps inside.

Subsequently Kulovitz was repositioned by the back door, because Frazier was thought to be in the basement. Kulovitz too was becoming impatient, feeling "that this has taken up a good part of my evening, and taxpayers' money. And decided

---

**2.** Appellant attorney has argued that the trial court's statement in its April 13, 1984 opinion, that the exigent circumstances argument seems to have merit, vitiates its later conclusion that the argument had been made without adequate factual foundation. But the issue had not yet been briefed, the defendant having not raised it through appellant until his reply brief. The trial court specifically ordered additional briefing in order to allow plaintiffs to respond to the argument, and evidently had not yet read Kulovitz's and Orsini's deposition testimony. Briefing and careful consideration of the record then convinced the trial court that sanctions were appropriate. The district court's failure to examine the depositions prior to full briefing by the parties does not in any way undermine its later conviction regarding Kulovitz's motivation for entering the house. Nor is plaintiffs' failure to raise the issue of sanctions of any significance, for Rule 11 specifically allows a court to impose sanctions on its own motion as it did here.

it was time to take some affirmative action." *Id.* at 79. The firemen were placing fans at the front door to ventilate the house, not to give Frazier any relief from the tear gas but to allow the officers who wanted to enter the house to be able to see. *Id.* at 81. While waiting for the fans to have some effect, Kulovitz began "begging" Frazier to surrender, to which Frazier did not respond, causing Kulovitz to crawl cautiously down the basement stairs. Kulovitz was worried that "out of blackness, this guy is going to jump on me." *Id.* at 83. This foray was abortive. Kulovitz testified that he then "stood out, looked at my night stick, looked at Yoways, and said, 'Well, you knew the job was dangerous when you took it. Let's go get him.' " *Id.* at 84. Kulovitz admitted again that he was getting impatient and felt that

> this whole thing was being dragged out, and dragged out.
>
> He [Frazier] had been given more than ample opportunity to surrender, if in fact he intended to surrender at all. He had been given every opportunity in the world. I mean, half a dozen people had talked to him. And all this time delay and everything else.
>
> I felt, you know, there's just no more waiting. Let's do it. So we did. We went downstairs to get him.

*Id.* at 86.

As the two started down the stairs, Kulovitz's vision was impaired severely by the tear gas smoke. He was worried that "if a 230 pound man with a hunting knife jumped out, I wouldn't see him." *Id.* at 87. Consequently Trooper Yoways took the lead. Kulovitz advised him to place his riot baton in front of him "in case the guy jumped out of the darkness, he'd be able to stop him or hold him at bay, long enough for us to try to disarm him." *Id.* at 88.

What emerges clearly from this deposition testimony is that Kulovitz was impatient to resolve the stalemate, and that he was very concerned Frazier was lying in wait inside the house to ambush any officer who entered. Nothing suggests Kulovitz was concerned about Frazier's health or that he believed that Frazier might have succumbed to the tear gas smoke and be in need of help. Quite the contrary, fueled by earlier discussions with some of the other officers present that had emphasized Frazier's record of assault on police officers, large size and significant strength, Kulovitz believed Frazier would be relatively unaffected by the tear gas smoke, at least unaffected enough to be capable of attacking any who entered. While Kulovitz certainly desired Frazier to come out and surrender, even "begging" him to do so, he was not motivated by a concern for Frazier's well-being. He wanted only to end the crisis without physical injury to the officers present, taking elaborate precautions when he did enter the house. That Frazier turned out to be unconscious and in need of aid does not obviate the fact that Kulovitz, as his own testimony indicates, at the time he entered the house did not do so to "save" Frazier.

Similarly, defendant Orsini's testimony indicates only that the officers pulled Frazier out of the house "to get him to safety." Orsini Dep. at 77. It does not indicate that he entered the house to bring Frazier to safety from a fire or from the tear gas smoke. Rather, he testified that those present "decided that we were going to have to go in and see if we could find him," *id.* at 66, because he was not abandoning the house as the officers had expected. They had to do so in order to end the long wait outside the house, not in order to save Frazier, even though once they found him unconscious they realized that he was in need of medical attention. Wanting Frazier out of the house, as the officers clearly did, does not infer a concern for Frazier's safety. They had wanted to flush him out from the house all evening and entered to end their siege, not to save Frazier either from a fire then unknown to Kulovitz and Orsini (as noted earlier, both he and Orsini had only seen white tear gas smoke rather than black smoke from the fire in the base-

ment (Appellant's App. A–37, A–38)) or from the effect of the tear gas smoke.

■ Not only did Kulovitz's counsel blatantly misrepresent the officers' motivation for entering the house, positing they did so due to an emergency when nothing in their testimony indicates any concern for Frazier's health, but appellant counsel later backed off from this position and argued to the trial court that the objective circumstances established that Kulovitz might have entered the house to save Frazier's life. The district court quite rightly points out that an argument that Kulovitz entered the house because of the danger to Frazier "is far different from an argument that Kulovitz might have concluded, based on what he knew at the time, that a danger existed." Memo. Opinion of July 9, 1984, at 2 (Appellant's App. A–3). Because the emergency exception to the Fourth Amendment's warrant requirement requires that the entering officer subjectively believe that an emergency exists, the officer's motivation is the linchpin of the defense's

relevancy to a particular fact situation.[3] Yet nothing in the evidence available to appellant counsel at the time suggests that the defense was available, and evidently he made no attempt to ascertain whether the argument otherwise might have basis in fact. As a result, the argument is without foundation, and the situation presents the paradigm of when Rule 11 sanctions are appropriate.[4]

■ Although according to the judge plaintiffs' counsel claimed to have spent a total of seventeen hours[5] responding to Kulovitz's summary judgment motion and replying to appellant counsel's response to the court's order to show cause (Appellant's App. A–7), the district court believed that the brevity of plaintiffs' responses, which cited little legal precedent, justified only an award of four hours. We do not believe that the district judge, who is obviously much more familiar with this case than we, abused his discretion in so doing. We affirm the award of $400 in attorney's

---

**3.** Appellant presses before us an argument the court below rightly rejected, that the good faith immunity standard of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), justifies warrantless entry if a reasonable person would have perceived that an emergency existed. Br. at 20; Memo. Opinion of July 9, 1984, at 4. This argument is simply a confused attempt to make an end run around the exigent circumstances exception to the warrant requirement of the Fourth Amendment that the officer enter because he thinks an emergency justifies it. If the emergency does not motivate the officer, the *exception is lost.* Certainly the objective circumstances are relevant to determine the officer's subjective intent, but when the officer's own testimony indicates that he was not motivated by an emergency, then it does not matter what might have motivated someone else in that situation. Moreover, if what appellant counsel means is that Kulovitz cannot obtain summary judgment on the exigent circumstances exception to the Fourth Amendment but could do so on some other grounds, then appellant's argument is irrelevant. Sanctions were imposed for counsel's groundless assertion of exigent circumstances, not for contentions, factual or legal, relating to other possible defenses Kulovitz might have, but did not raise.

**4.** Nor does *Suslick v. Rothschild Sec. Corp.,* 741 F.2d 1000, 1007 (7th Cir.1984), provide appel-

lant any support. We decided this case under the prior version of Rule 11, which required an attorney to submit a pleading in bad faith before sanctions would be appropriate. This requirement has been eliminated in the revised Rule 11. Appellant suggests that our conclusion there that a claim's being colorable precluded Rule 11 sanctions—since therefore subjective bad faith could not be proved—means that if objective factors indicate that an attorney's argument could have merit, then sanctions are inappropriate. Here, though, Kulovitz's deposition testimony demonstrates that the argument that he entered the house because of an emergency is not colorable. His own words preclude that conclusion. For a defense based on subjective intent, this testimony would be the most important evidence available. Excluding facts as they later developed, since only what the officers believed to be true when they entered the house is relevant, the evidence—not only the conditions of the house filled with tear gas but also the participants' testimony—renders untenable the proposition that Kulovitz entered the house to save Frazier.

**5.** The district court evidently miscalculated the number of hours spent by plaintiffs' counsel by one hour. See Appellant's App. A–4. Counsel claimed sixteen, not seventeen, hours, in their reply to rule to show cause for sanctions (Plaintiffs' App. A–14).

fees to plaintiffs pursuant to Fed.R.Civ.P. 11.[6]

FLAUM, Circuit Judge, concurring.

While concurring in the result reached by the majority, I cannot agree that this case "presents the paradigm of when Rule 11 sanctions are appropriate." *Ante* at 265. I do not find this to be a case where an attorney advanced an argument that was directly refuted by clear, objectively verifiable facts, but rather a case where an attorney offered a contention concerning his client's subjective intent that was not clearly supported by his client's deposition testimony. Given the subjectivity involved in determining in hindsight why a party took a certain course of action, I believe that this appeal presents a fairly close question as to whether the appellant's argument about Kulovitz's intent was "well grounded in fact" for purposes of Rule 11. Nevertheless, I agree with the majority that under our very limited scope of review, the district court's imposition of Rule 11 sanctions cannot be deemed an abuse of discretion.

State's Attorney Daley does not contend that the sanction was improper in that the baseless argument was made by David S. Allen, one of his assistants.

---

6. This is not such a frivolous appeal that we should grant plaintiffs' request for $1,000 attorney's fees for 10 hours work on appeal (Br. 8 and oral argument).