

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

EMILY RIEGEL, et al.,

       Respondents,

v.

NICOLE FORSYTHE,

       Appellant.

)
)
)
)
)
)
)
)
)
)
)

WD83131

OPINION FILED:
September 1, 2020

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Kevin D. Harrell, Judge

**Before Division Two:** Karen King Mitchell, Presiding Judge, and
Anthony Rex Gabbert and W. Douglas Thomson, Judges

Nicole Forsythe appeals the judgment for sanctions arising from her representation of

defendants in an underlying wrongful death action. Forsythe raises three points on appeal. For

her first point, she argues that the judgment is appealable under the collateral-order doctrine

because the judgment is conclusive, it resolved important questions separate from the merits of the

underlying lawsuit, and it is effectively unreviewable on appeal from final judgment in the

underlying action. For her second and third points, Forsythe argues that the circuit court erred in

entering the judgment for sanctions in that the court violated her right to due process of law by

failing to provide her notice and an opportunity to be heard (Point II) and she did not act in bad

faith (Point III). Because the judgment from which Forsythe appeals is not a final judgment, we lack appellate jurisdiction over her appeal, which we dismiss accordingly.

**Background**

Plaintiffs Emily Riegel, Allan Pickert, and Joann Pickert (collectively, Plaintiffs) filed the underlying wrongful death action against David Jungerman, his daughter Angelia Buesing, and several family-owned businesses and trusts (collectively, Defendants).[1] The underlying action includes a fraudulent transfer claim, alleging that Defendants made various asset and property transfers to hinder or delay existing and future creditors, including Plaintiffs, from collecting on their lawful claims. All claims as to all Defendants in the underlying action remain pending. Forsythe represented the Defendants in the underlying action until she was permitted to withdraw on July 8, 2019, due to a conflict of interest.

In view of the number and size of the allegedly fraudulent transfers, the circuit court appointed a receiver over Defendants' property and assets; we affirmed the appointment. *Riegel v. Jungerman*, 597 S.W.3d 695, 708 (Mo. App. W.D. 2019). Concluding that Defendants had "intentionally withheld information from and, with their attorneys and others, ha[d] obstructed and misled, intentionally or unintentionally, [him]," the receiver filed a motion (1) limiting attendance at examinations under oath and (2) requiring confidentiality regarding such examinations. The court entered an order granting the unopposed motion on April 5, 2019 (the Confidentiality Order). The Confidentiality Order states, in relevant part:

> (1) the General Receiver may conduct examinations under oath of all Defendants, separately, and, except for the Defendant being examined and that Defendant's counsel of record, no party or party's counsel shall be permitted to attend such examinations; (2) the General Receiver may conduct examinations under oath of non-parties, and no party or party's counsel shall be permitted to attend such

---

[1] David Jungerman was arrested and charged with first-degree murder and armed criminal action in connection with the death of Plaintiffs' husband and son, Thomas Pickert. *State v. Jungerman*, No. 1816-CR01619-01 (Jackson Cty. Cir. Ct.). The criminal case is currently pending.

examinations; and (3) all Defendant examinees and non-party examinees and their respective attorneys, if any, shall be strictly prohibited from disclosing to any party, to any non-party, or to any counsel for any party or non-party: (a) the fact that an examination took place; (b) the date, time, or place of such examination, or the identity of the examinee; (c) the content, nature, scope, or subject matter of any question asked or response provided during the examination; and (d) any specific information, documents, or other materials identified or otherwise addressed in any manner during the examination.

On May 6, 2019, the receiver filed a motion requesting a show-cause hearing as to why Defendants and Forsythe should not be held in contempt for violating the Confidentiality Order by contacting a witness's attorney and inquiring about the content of a confidential examination. Specifically, the show-cause motion alleged that, following the receiver's May 1, 2019 examinations under oath of two non-parties, the attorney for the non-party examinees informed the receiver that, on May 3, 2019, he had received both "a call and an email from Nicole Forsythe wanting to discuss the deposition with [the attorney]."[2]

On May 6, 2019, the court granted the receiver's show-cause motion and set a hearing for May 9, 2019, "for Defendants and attorney Nicole Forsythe to show cause as to why they should not be held in contempt." On May 7, 2019, the court entered an order re-setting the hearing for May 13, 2019; then, on May 9, 2019, the court entered an amended order and hearing notice retaining the May 13 hearing date and providing additional notice of the purpose of the hearing:

> (1) for Defendants and attorney Nicole Forsythe to show cause as to why they should not be held in contempt; and (2) for the Court to take up the issues of whether, based upon the allegations set forth in the General Receiver's Second Motion for Show Cause Hearing, Defendants and/or attorney Nicole Forsythe have acted in bad faith and, if so, whether the Court should exercise its inherent powers to enter sanctions against Defendants and/or attorney Nicole Forsythe.

---

[2] A copy of Forsythe's email was attached to the motion as an exhibit. In relevant part, Forsythe's email stated, "I just left you a voicemail and am following up with this message. I was wondering if you'd be willing to discuss . . . Wednesday's deposition with me."

Forsythe filed a response to the receiver's show-cause hearing wherein she admitted to "contact[ing] the deponent's attorney," claiming she did so out of an "ethical obligation to investigate this case," that the conduct "did not violate the [Confidentiality Order], and that "the [Confidentiality Order] is unlawful and unenforceable."

In his opening remarks at the May 13 hearing on the receiver's show-cause motion, Forsythe's counsel requested clarification as to whether the contempt contemplated by the motion was civil or criminal. The receiver stated that he would "leave it to the wisdom of the court to determine what if any sanction and/or measure should be taken against" Ms. Forsythe. The trial court took the issue under advisement. In response to counsel's later objection to proceeding on a criminal contempt motion, the court overruled the objection, but stated it would "conduct this hearing in light of a civil contempt, again, taking the matter under advisement, though."

On May 14, 2019, the court entered its judgment finding that Forsythe "violated the spirit, but not the letter," of the Confidentiality Order by asking deponent's counsel to discuss the May 1 deposition. The court concluded that Forsythe's attempt to obtain information about the deposition "was done contumaciously and in bad faith." The court also found that Forsythe had previously admitted in open court that she had not cooperated with, and had obstructed, the receiver, actions which the court concluded also were "done contumaciously and in bad faith."

Finding that Forsythe was provided "[n]otice and an opportunity to be heard . . . via the [May 9 notice and the May 13 hearing]," and that the court "has the inherent power to sanction bad faith conduct," the court sanctioned Forsythe $10,000.00 "for her bad faith conduct in this matter" and ordered her to remit that amount to the receiver within 45 days of issuance of the judgment.[3] The court determined "the sanction to be reasonably necessary to protect the [c]ourt's

---

[3] On appeal, Forsythe does not offer any evidence that she remitted $10,000.00 to the receiver.

orderly administration of its business, namely reasonably necessary to allow the . . . [r]eceiver to perform his duties as an arm of the [c]ourt."

On February 18, 2020, with the instant appeal pending, Forsythe moved the circuit court to vacate the sanction judgment claiming it "violated Ms. Forsythe's rights to due process of law by failing to provide proper notice and an opportunity to be heard" and, alternatively, "to amend its judgment to make an 'express determination that there is no just reason for delay'" under Rule 74.01(b). The court denied Forsythe's motion.

## Jurisdiction

We begin our analysis with Forsythe's first point, wherein she argues that the judgment is appealable under the collateral-order doctrine, because we must first determine whether we have jurisdiction over her appeal. If we lack appellate jurisdiction, we must dismiss the appeal. *Glasgow Sch. Dist. v. Howard Cty. Coroner*, 572 S.W.3d 543, 548 (Mo. App. W.D. 2019).

"The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 767 (Mo. banc 2020) (quoting *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017)). "Although many statutes govern 'the right to appeal, the only statute even potentially applicable to the present case is section 512.020(5),' which provides that 'final judgments' are appealable."[4] *Id.* (quoting *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221). In relevant part, § 512.020(5)[5] states,

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:

---

[4] "The converse of a final judgment is an interlocutory order, which is an order that is not final and decides some point or matter between the commencement and the end of a suit but does not resolve the entire controversy." *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011).

[5] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2018 Supplement.

. . .

(5) Final judgment in the case or from any special order after final judgment in the cause . . . .[6]

As the Supreme Court of Missouri recently held in *Wilson*:

[A] "final judgment" for purposes of section 512.020(5) must satisfy the following criteria. First, it must be a judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim). Second, it must be "final," either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b).

*Wilson*, 600 S.W.3d at 771 (footnote omitted).[7]

Here, Forsythe appeals from the court's judgment imposing sanctions for bad faith conduct. The Court previously addressed a similar issue in *Buemi v. Kerckhoff*, 359 S.W.3d 16 (Mo. banc 2011). There, the Court held an order sustaining a motion for sanctions against a party did not dispose of a "judicial unit" because "a motion for sanctions is not a legal claim filed 'in an action'

---

[6] Rule 74.01(b) (2018) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Here, the circuit court denied Forsythe's motion to amend its judgment to make a determination under Rule 74.01(b) that there is no just reason for delay. "[T]he question of whether an eligible judgment should be certified under Rule 74.01(b) is left to the sound exercise of the circuit court's discretion." *Wilson v. City of St. Louis*, 600 S.W.3d 763, 771 (Mo. banc 2020). On appeal, Forsythe does not argue—and we do not find—that the judgment for sanctions was eligible for certification under Rule 74.01(b), nor does she argue that the court abused its discretion in denying her motion to certify the judgment under Rule 74.01(b).

[7] The Court elaborated:

A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a 'judicial unit' of claims, meaning . . . : (a) [it] disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court.

*Wilson*, 600 S.W.3d at 771.

by way of a petition, counterclaim, cross-claim, or third-party claim, [and, therefore,] it does not fall within the definition of a 'claim for relief,' as that term is used in Rule 74.01(b)." *Id.* at 21. In *Wilson*, the Court clarified that, while *Buemi* was correct in holding that the order imposing sanctions was ineligible for certification under Rule 74.01(b), the problem with the order was not that it was a judgment that failed to dispose of a "judicial unit," but that the order was not a judgment at all. *Wilson*, 600 S.W.3d at 769 n.8.

"[A] judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim." *Id.* at 768 (quoting *State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 598 (Mo. banc 2019)). "As the Court explained in *Buemi*, 359 S.W.3d at 21, a motion for sanctions is not a 'claim.' Therefore, an order granting such a motion cannot be a judgment." *Id.* at 769, n.8. To be a "final judgment" for purposes of § 512.020(5), "the order must—at a minimum—be a judgment." *Id.* Thus, after *Wilson*, an order, however denominated, for monetary sanctions against an attorney—even one who no longer represents a party in the underlying litigation—is not a judgment, and therefore, cannot be a "final judgment" under § 512.020(5).

In her first point, Forsythe appears to concede that the judgment for sanctions is not a final judgment within the meaning of § 512.020(5) and instead argues that the judgment is appealable under the collateral-order doctrine, in that the judgment is conclusive, it resolved important questions completely separate from the merits of the underlying lawsuit, and it is effectively unreviewable on appeal from final disposition of the underlying action. While some federal courts have recognized the collateral-order doctrine as an avenue for interlocutory review,[8] the United

---

[8] *See, e.g., Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) (finding award of attorneys' fees assessed against non-parties who no longer had any connection to the case was appealable as a collateral order because the award "conclusively determine[d] the disputed question, resolve[d] an important issue completely separate from the merits of the action, and [was] effectively unreviewable on appeal from a final judgment.") (quoting *Coopers*

States Supreme Court has called the application of the doctrine to monetary sanctions against attorneys into question.[9] Moreover, no Missouri court has adopted the doctrine, and we decline to do so here.[10]

As the Court noted in *Buemi*, while § 512.020(5) does not permit immediate appeal of a court's order imposing sanctions, such order can still be reviewed. *Buemi*, 359 S.W.3d at 24. "For example, an order imposing sanctions can be reviewed after a final judgment is entered on the underlying claims."[11] *Id.* "Alternatively, if appeal is an inadequate remedy because irreparable harm will occur if immediate relief is not granted, a writ of prohibition can be used to obtain interlocutory review in the absence of a final judgment." *Id.*; *see Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Emp.*, 43 S.W.3d 293, 299 (Mo. banc 2001) ("As a general matter, the proper course for an aggrieved party without a final judgment is ordinarily by extraordinary writ."). "Therefore, a party wishing to challenge a trial court's imposition of sanctions can either appeal the trial court's order after a final judgment is entered on the underlying claim or claim[s] or, when appropriate, seek a writ of prohibition before final judgment is entered."[12] *Id.* at 25.

---

*& Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *but see Howard v. Mail-Well Envelope Co.*, 90 F.3d 433, 436-37 (10th Cir. 1996) (disagreeing that a sanction order against an attorney who no longer represents a party in the litigation is appealable under the collateral-order doctrine).

[9] *See Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 209-10 (1999) (holding that monetary sanctions imposed on attorneys—even those no longer representing parties to the litigation—do not satisfy the requirements of the collateral-order doctrine). Although *Cunningham* involved discovery sanctions, its application is not so limited. *See, e.g.*, *Stanley v. Woodford*, 449 F.3d 1060, 1065 (9th Cir. 2006) ("The precedential effect of *Cunningham* is clear. We now expressly interpret *Cunningham* as extending to sanctions under a . . . district court's inherent powers . . . .").

[10] In fact, in her dissent in *Buemi v. Kerckhoff*, Judge Stith cited the federal collateral-order doctrine as an example of the "[d]ifferences in interpretation and dissimilarity of application of rules regarding certification for interlocutory review between state and federal courts." 359 S.W.3d 16, 27, 27 n.4 (Mo. banc 2011) (Stith, J., dissenting).

[11] Forsythe asserts that the underlying litigation is likely to end in settlement, not a final judgment that is appealable. But, according to Case.net, no settlement hearing is currently scheduled in the underlying case (No. 1816-CV12977) and the parties are continuing to notice up depositions.

[12] We acknowledge that this court previously denied Forsythe's petition for writ of prohibition to stop the circuit court from entering and enforcing the sanction judgment. *State ex rel. Nicole Forsythe v. Hon. Kevin D. Harrell*, WD83694. "The denial of [Forsythe's] request for an extraordinary writ does not constitute a ruling on the merits of [her] challenge to the sanction order." *Buemi*, 359 S.W.3d at 25 n.10. "Therefore, such denial does not

8

Because "[t]his [c]ourt has no authority to grant a right of appeal beyond that given by statute," *Wilson*, 600 S.W.3d at 769 n.7 (quoting *First Nat'l Bank of Dieterich*, 515 S.W.3d at 222), and Forsythe's appeal does not challenge a "final judgment" as that phrase is used in § 512.020(5), we lack appellate jurisdiction and, therefore, we dismiss her appeal.

Point I is denied.[13]

## Conclusion

Because we lack appellate jurisdiction, we dismiss Forsythe's appeal of the judgment for sanctions.

Karen King Mitchell, Presiding Judge

Anthony Rex Gabbert and W. Douglas Thomson, Judges, concur.

---

preclude [Forsythe] from filing a new petition if circumstances arise that would make appeal an inadequate remedy, such as an attempt to collect by the parties who were awarded monetary sanctions." *Id.*

[13] In light of our resolution of Point I, we do not reach Points II and III.